

**Service of Process Transmittal**
05/02/2019
CT Log Number 535406412

| | |
|---|---|
| **TO:** | Jennifer Lauro<br>The Hanover Insurance Group<br>N-430, 440 Lincoln St<br>Worcester, MA 01653-0002 |
| **RE:** | **Process Served in Tennessee** |
| **FOR:** | Massachusetts Bay Insurance Company  (Domestic State: NH) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | COX-McCARVER PARTNERSHIP, PLTF. vs. MASSACHUSETTS BAY INSURANCE COMPANY, DFT. |
| **DOCUMENT(S) SERVED:** | LETTER, CIVIL SUMMONS, COMPLAINT, EXHIBIT(S) |
| **COURT/AGENCY:** | Madison County Chancery Court, TN<br>Case # 77586 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Knoxville, TN |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 05/02/2019 postmarked on 04/30/2019 |
| **JURISDICTION SERVED:** | Tennessee |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days from the date this summons is served upon you |
| **ATTORNEY(S) / SENDER(S):** | J. BRANDON McWHERTER<br>GILBERT McWHERTER SCOTT BOBBITT PLC<br>341 Cool Springs Blvd., Suite 230<br>Franklin, TN 37067<br>615-354-1144 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/02/2019, Expected Purge Date: 05/07/2019<br><br>Image SOP<br><br>Email Notification,  Service of Process  ogclitmail@hanover.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>300 Montvue RD<br>Knoxville, TN 37919-5546<br>312-345-4336 |

Page 1 of  1 / HP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

TN Department of Commerce & Insurance

Service of Process
500 James Robertson Parkway
Nashville, Tennessee 37243



CERTIFIED MAIL

7017 1450 0002 1334 7838



FIRST CLASS

ZIP 37243
02 4W
0000346000 APR 30 2019

U.S. POSTAGE >> PITNEY BOWES
$007.75

7017 1450 0002 1334 7838     04/23/2019
MASSACHUSETTS BAY INSURANCE COMPANY
300 MONTVUE RD, C/O C T CORP
KNOXVILLE, TN 37919-5546

37919$5546 C033

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

April 23, 2019

Massachusetts Bay Insurance Company
300 Montvue Rd, C/O C T Corp.
Knoxville, TN  37919-5546
NAIC # 22306

Certified Mail
Return Receipt Requested
7017 1450 0002 1334 7838
Cashier # 43927

Re:   Cox-Macarver Partnership  V.  Massachusetts Bay Insurance Company

Docket # 77586

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of Commerce and Insurance was served April 22, 2019, on your behalf in connection with the above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Chancery Court Clerk
     Madison County
     100 East Main Street, #200
     Jackson, Tn  38301

| Madison County Chancery Court Jackson, Tennessee | **STATE OF TENNESSEE**<br>**CIVIL SUMMONS**<br>page 1 of 1 | Case Number |
|---|---|---|

**COX-McCARVER PARTNERSHIP v. MASSACHUSETTS BAY INSURANCE COMPANY**

Serve On:
**MASSACHUSETTS BAY INSURANCE COMPANY**
**500 James Robertson Parkway**
**Nashville, TN 37243-0565**
**PLEASE SERVE THROUGH THE**
**COMMISSIONER OF INSURANCE**

You are hereby summoned to defend a civil action filed against you in Circuit Court, Sevier County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the below date, judgment by default may be rendered against you for the relief sought in the complaint.

Issued: _____        _____
                                                                                   Clerk / Deputy Clerk

Attorney for Plaintiff:   J. Brandon McWherter, Gilbert Russell McWherter Scott Bobbitt PLC
                                   341 Cool Springs Blvd., Suite 230, Franklin TN 37067

## NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA § 26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to     _____, _____ Clerk, _____County

## CERTIFICATION (IF APPLICABLE)

I, _____, _____ Clerk of _____ County do certify this to be a true and correct copy of the original summons issued in this case.

Date: _____        _____
                                                          Clerk / Deputy Clerk

**OFFICER'S RETURN:** Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows: _____

_____

Date: _____        By: _____
                                                          Officer, Title

**RETURN ON SERVICE OF SUMMONS BY MAIL:** I hereby certify and return that on _____, I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____. On _____ I received the return receipt, which had been signed by _____ on _____.
The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: _____
                                                          Notary Public / Deputy Clerk (Comm. Expires _____)

Signature of Plaintiff _____        Plaintiff's Attorney (or Person Authorized to Serve Process)
                                                                              (Attach return receipt on back)

*ADA: If you need assistance or accommodations because of a disability, please call _____, ADA Coordinator, at ( ) _____.*

*Rev. 03/11*

IN THE CHANCERY COURT OF MADISON COUNTY, TENNESSEE

COX-MCCARVER PARTNERSHIP,

    Plaintiff,

v.

MASSACHUSETTS BAY INSURANCE COMPANY,

    Defendant.

No. 77586

JURY DEMAND

FILED
TIME: 3:40
MAR 01 2019
PAM CARTER
CLERK & MASTER
BY: _____
DEPUTY CLERK

## COMPLAINT

COMES NOW the Plaintiff, Cox-McCarver Partnership, and for its Complaint against Massachusetts Bay Insurance Company would state and show as follows:

### PARTIES AND JURISDICTION

1. Cox-McCarver Partnership ("Plaintiff") is a partnership comprised of two partners, Flint Cox, a resident of the State of Tennessee and The Kay Cox Trust. The Kay Cox Trust has co-trustees, Flint Cox and Kristi Cox McCarver, both of which are residents of the State of Tennessee. At all times relevant hereto, Plaintiff owned the commercial building located at or around 71 Wisteria St., Jackson, Tennessee (the "Insured Premises").

2. Massachusetts Bay Insurance Company ("Defendant") is an insurance company conducting business in the State of Tennessee, including Madison County, Tennessee. Defendant is a corporation formed under the laws of the State of Massachusetts with its principal place of business located at 440 Lincoln Street, Worcester, Massachusetts. Defendant is a subsidiary of the Hanover Insurance Group.

1

3. This Complaint originates as the result of a storm event that damaged the building located at the Insured Premises, and Defendant's wrongful failure and refusal to promptly and fully pay Plaintiff for the insured losses it sustained.

4. Jurisdiction and venue are appropriate in this Court.

## FACTS

5. At all times relevant hereto, Plaintiff was an insured policyholder pursuant to an insurance contract whereby Defendant agreed to insure the building located on the Insured Premises against property damage, bearing Policy No. ZD5 9592403 05 (the "Policy").

6. At all times relevant hereto, commercial buildings were located on the Insured Premises with two primary types of low-slope roofing, including sections with a built-up roof and a section with an EPDM roof system with gravel ballast. Below is an aerial photograph of the building:



2

7. The Policy provided insurance coverage for loss or damage to the building located on the Insured Premises.

8. The Policy is an "all risk" policy, which means that it provided insurance coverage for all risks of direct physical loss to covered property unless the loss is specifically excluded or limited by the Policy.

9. As set forth in the Policy's declarations, coverage for the building on the Insured Premises was on a "replacement cost" valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation.

10. Pursuant to the Policy and at all times relevant to this Complaint, Plaintiff paid a premium to Defendant in exchange for insurance coverage as set forth in the Policy. Plaintiff paid the required premiums at all times relevant to this Complaint.

11. On December 28, 2016, a severe storm event with large hail struck the building located on the Insured Premises, causing substantial damage. On March 27, 2017, a second hail storm struck the building, causing additional damage. The aforementioned storm damage shall hereafter be referred to as the "Loss".

12. Below is an exemplar photo of the hail damage to the roof of the building on the Insured Premises caused by the Loss:



3

13. As a result of the Loss, the building located on the Insured Premises suffered immediate and direct physical loss, including, but not limited to, damage to the roof.

14. Upon discovery of the damage, Plaintiff promptly reported the Loss to Defendant on or around April 10, 2017.

15. The Policy was in full force and effect at the time of the Loss, and the Loss is a compensable claim under the terms of the Policy. As it relates to the Loss, there is no applicable exclusion.

16. After the Loss and after reporting the claim, Plaintiff fulfilled all duties imposed upon it by the Policy.

17. In May 2017, Defendant assigned an adjuster, Gary Barkman, to handle the claim. On May 8, 2017, Mr. Barkman advised that Hanover had retained Steve Horridge to complete an "engineering inspection" of the Insured Premises.

18. Mr. Horridge inspected the Insured Premises on May 15, 2017. At the time of his inspection, Mr. Horridge was not licensed as an engineer in the State of Tennessee.

19. On May 31, 2017, Plaintiff inquired with Mr. Barkman as to whether Defendant had received a copy of Mr. Horridge's report. Mr. Barkman responded on June 2, 2017 and advised that he had discussed the inspection with "the engineer" but had not received a report. On June 26, 2017, Mr. Barkman advised that he was "awaiting engineering report that should be received later this week."

20. On August 9, 2017, Plaintiff inquired again about the status of Mr. Horridge's report. On August 22, 2017, Mr. Barkman responded that he was still awaiting receipt of the

4

report. In October 2017, another request was made for the production of Mr. Horridge's report, but Mr. Barkman had no new information to provide.

21. On February 22, 2018, Plaintiff reminded Defendant, via Mr. Barkman, that it had not yet received the previously requested certified copy of the insurance policy or the report from the engineer that inspected the Insured Premises on Defendant's behalf. Defendant did not respond.

22. On March 14, 2018, Plaintiff again asked that Defendant produce a copy of the engineer's report and also requested that the claim be expedited due to leakage into the building. Defendant did not respond:

23. By letter dated July 18, 2018, Plaintiff, through counsel, followed up again to request a status update on the claim, to inquire when payment would be made, and to again request a copy of Mr. Horridge's report.

24. Having received no response, Plaintiff's counsel sent a follow-up communication to Defendant on July 27, 2018 to again request a response. Defendant, through Mr. Barkman, responded on August 1, 2018 that he was still awaiting receipt of Mr. Horridge's report and that he should have it by the following day.

25. On August 1, 2018, Plaintiff requested that Defendant provide an estimate of the loss. Defendant did not respond to that request and has never produced an estimate for the repair costs associated with the Loss.

26. On August 6, 2018, Defendant finally produced a copy of Mr. Horridge's report, which was dated March 17, 2018, ten months after his inspection. In his report, Mr. Horridge acknowledged "hail impacts to the roof systems on the property," and opined that it was impossible for him to determine the date of the event that caused the hail impacts. Mr. Horridge also acknowledged the largest hail to have struck the property occurred on December 28, 2016.

Additionally, Mr. Horridge concedes in his report that there were multiple hail "impacts per square that are indicative of damage associated with that of hail."

27. Mr. Horridge's report identifies he has an engineering license in Tennessee. However, Mr. Horridge was not licensed as an engineer in Tennessee until March 20, 2018, ten months after he inspected the Insured Premises and three days after he signed and sealed his report. Mr. Horridge was not licensed at the time he inspected the Insured Premises, nor at the time he prepared and disseminated his "engineering report."

28. Defendant knew Mr. Horridge was not licensed as an engineer and intentionally delayed handling Plaintiff's claim in hopes that Mr. Horridge would be licensed and that it could rely on Mr. Horridge's biased opinions. In fact, during a phone conversation, Mr. Barkman advised Plaintiff's representative that Mr. Horridge would say whatever he wanted him to say.

29. On August 22, 2018, Plaintiff provided a report to Defendant authored by Tom Irmiter of Forensic Building Science and Robert Hinojosa, P.E., which details the substantial hail damage to the Insured Premises caused by the Loss.

30. In October 2018, Plaintiff offered for its consultants, Mr. Irmiter and Mr. Hinojosa, to meet with Defendant's consultant, Mr. Horridge, at the Insured Premises or to discuss the claim via a conference call. A follow-up offer was made in November 2018, but Defendant has never responded to Plaintiff's offers for the meeting.

31. On November 12, 2018, Plaintiff provided Defendant with a report authored by another engineer, Steve Prosser, who also concluded that the building at the Insured Premises was severely damaged by hail as a result of the Loss.

32. On November 20, 2018, Defendant, through Mr. Barkman, promised to check with Mr. Horridge's calendar and provide date options the following week for a meeting among the

experts. Unfortunately, Mr. Barkman never responded. On November 27, 2018 and December 3, 2018, Plaintiff again sought to schedule a call between the experts as soon as possible. Mr. Barkman never responded.

33. On December 3, 2018, Plaintiff provided Defendant with an estimate of the costs necessary to repair the damage caused to the exterior of the Insured Premises by the Loss. Defendant has not responded to the estimate.

34. To date, Defendant has not paid Plaintiff anything for the Loss.

35. To date, Defendant has made no decision on the claim, but instead has engaged in a pattern of delay in an apparent hope that Plaintiff would just abandon its claim.

36. Defendant has never issued a reservation of rights letter to Plaintiff regarding this claim.

37. Defendant has never sent a single letter to Plaintiff regarding the claim, instead only periodically responding with short emails containing no substantive response to the claim.

38. Plaintiff has had numerous experts inspect the Loss, all of which have concluded that the Insured Premises was damaged by hail.

39. Defendant's own expert has acknowledged hail damage to the Insured Premises, but Defendant has made no payments whatsoever for the acknowledged damage.

40. Defendant has refused to state when payment would be made, how much will be paid, and the basis of that decision.

41. The Policy has a contractual limitations period requiring that any legal action must be brought within two years of the date on which the direct physical loss occurred. On December 27, 2018, Plaintiff and Defendant entered into a Tolling Agreement which provided that the time period between December 27, 2018 and February 28, 2019, plus an additional three business days

7

following February 28, 2019, would "not be included in determining the applicability of any defense" based on the lapse of time, including statutes of limitations, any contractual limitations periods, etc. A copy of the Tolling Agreement is attached hereto as Exhibit "A".

42. Despite the fact that Plaintiff has fulfilled all duties imposed upon it by Defendant and is at no fault in this matter, Defendant has failed to fully and promptly pay Plaintiff's claim for insurance proceeds.

43. To date, Defendant has failed to fully and properly pay Plaintiff's claim as required by the Policy.

44. There is no reasonable coverage dispute or other justifiable reason for Defendant's failure to pay Plaintiff's claim associated with the damage sustained.

45. Defendant's failure to timely pay Plaintiff the amount owed pursuant to the Policy is without justification.

46. Defendant's failure to pay the money and benefits due and owing Plaintiff under the Policy has caused it to initiate this lawsuit to recover the insurance proceeds to which it is entitled.

47. As a direct and proximate cause of Defendant's actions/inactions, Plaintiff has sustained substantial compensable losses, including all amounts due Plaintiff under the Policy and other such costs and expenses incurred as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

### Count I – Breach of Contract (against Defendant)

48. The allegations contained in the preceding paragraphs of this Complaint are incorporated herein by reference, as if set forth verbatim.

49. The Policy is a binding contract and is supported by valid consideration.

8

50. Defendant is in total, material breach of the Policy, and Defendant is liable to Plaintiff under the Policy for the Loss. Specifically, Defendant breached its contract with Plaintiff by its failure and refusal to fully and promptly pay the amounts owed to Plaintiff as a result of the Loss as required by the terms of the Policy.

51. As a result of Defendant's breach of contract, Plaintiff has sustained substantial compensable losses for the amounts claimed under the Policy, including but not limited to the replacement cost value and/or actual cash value of the damage to the building located on Insured Premises, as well as consequential damages, plus interest thereon.

52. Defendant's actions and breaches have further caused Plaintiff great and substantial harm due to the fact that it has been unable to replace much of the damage caused by the Loss as a result of the financial hardship unduly placed upon it as a direct and proximate result of Defendant's failure to pay Plaintiff the proper amounts as required by the Policy.

53. Defendant is liable to Plaintiff for its losses.

54. Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct. App. Oct. 31, 2013). Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiff's claim when liability was clear; (2) refused and failed to conduct a reasonable investigation of Plaintiff's claim based on all available information; (3) unjustly refused to pay Plaintiff's claim for its own financial preservation with no reasonable or justifiable basis; (4) refused and failed to obtain all reasonably available information and generally ignored Plaintiff's claim; (5) failed to adopt, implement, and enforce reasonable standards for the prompt investigation and settlement of claims arising under its insurance policies; (6) failed to treat

9

Plaintiff's interests equal to that of its own; (7) failed to promptly provide Plaintiff with a reasonable explanation for its refusal to fully pay Plaintiff's claim; (8) failed to timely and fully pay all amounts due and owing under the Policy with no reasonable or justifiable basis; (9) agreed and acknowledged there was covered damage to the Insured Premises but then refused to pay anything for the damage that was acknowledged; (10) engaged unlicensed and biased consultants to assist with its investigation of the Loss to avoid its payment obligations; (11) delayed its handling of the claim and refused to make prompt payments or otherwise conclude its investigation and adjustment of the Loss; and (12) engaged in such other acts toward Plaintiff that are contrary to the duties owed to Plaintiff. Defendant knew, or reasonably should have known, that Plaintiff was justifiably relying on the money and benefits due it under the terms of the Policy. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendant consciously refused to fully compensate Plaintiff for its losses, and withheld monies and benefits rightfully due Plaintiff. In so acting, Defendant intended to and did injure Plaintiff in order to protect its own financial interest and should be punished. Plaintiff seeks, and is entitled to, punitive damages.

WHEREFORE, as a result of the foregoing, Plaintiff would respectfully request that proper process be issued and served on Defendant requiring it to answer or otherwise respond in the time period allotted by law, and that this Honorable Court award judgment against Defendant as follows:

    A.    For compensatory damages not to exceed $3,000,000.00;

    B.    For punitive damages not to exceed $10,000,000, or such other amount authorized by law or as the jury may find appropriate;

C.  For all costs incurred as a result of this action;

D.  For pre- and post-judgment and interest; and

E.  For such other further and general relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a jury.

Respectfully submitted,

GILBERT McWHERTER
SCOTT BOBBITT PLC

*/s/ J. Brandon McWherter*

J. BRANDON McWHERTER #21600
bmcwherter@gilbertfirm.com
JONATHAN L. BOBBITT #23515
jbobbitt@gilbertfirm.com
341 Cool Springs Blvd., Suite 230
Franklin, Tennessee 37067
(615) 354-1144

CLINTON H. SCOTT #23008
cscott@gilbertfirm.com
54 Exeter Rd., Suite D
Jackson Tennessee 38305
(731) 664-1340

*Attorneys for Plaintiff*

## COST BOND

This Firm stands as surety for costs in this cause.

GILBERT McWHERTER
SCOTT BOBBITT PLC

*/s/ J. Brandon McWherter*

J. BRANDON McWHERTER #21600



## TOLLING AGREEMENT

This Tolling Agreement (hereinafter the "Agreement") is entered into as of December 27, 2018, (hereinafter the "Effective Date"), by and between Massachusetts Bay Insurance Company (including its affiliates, sister companies, parent companies, subsidiaries, etc.) (hereinafter "Mass Bay"), on the one hand, and Cox McCarver LP a/k/a Cox McCarver Partnership (including its affiliates, assigns, partners, owners, successors, etc.) (hereinafter "Cox"), on the other hand.

WHEREAS, Mass Bay provided Cox certain insurance coverage under Policy No. ZD5 9592403 05 (hereinafter the "Policy") that insured the structure(s) located at 71 Wisteria St., Jackson, TN, among other locations; and

WHEREAS, Cox made a claim for payment under the Policy for direct physical loss alleged to have been sustained to the building located at or around 71 Wisteria St., Jackson, Tennessee, as a result of damages asserted to have been sustained to the building as a result of a hail and wind storm occurring on or around December 28, 2016 (hereinafter the "Insurance Claim"), which Mass Bay designated as Claim No.15-00957494; and

WHEREAS, Cox and Mass Bay have not yet reached an agreement concerning the alleged damage, the scope and amount of alleged damages and/or whether any coverage exists for these items; and

WHEREAS, Mass Bay and Cox (singularly "Party" and collectively the "Parties") have not been able to reach a resolution of the Insurance Claim, but desire to enter into this Tolling Agreement to avoid premature litigation, to allow Mass Bay additional time to complete its investigation of the claim, and to allow the Parties additional time to conduct settlement negotiations; and

WHEREAS, pursuant to the terms of this Agreement, Mass Bay has agreed to toll any and all limitations and/or time-related defenses that it may or will have to the Insurance Claim or any other claims, causes of action, and/or rights that Cox may have concerning or relating in any way to the Insurance Claim.

NOW THEREFORE, in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1. **Tolling of the Limitations Periods.** The period between the Effective Date of this Agreement and the Termination Date (as defined below) of this Agreement shall not be included in determining the applicability of any defense based on a statute of limitations, any contractual limitations periods, any limitations period(s) in the Policy (including, without limitation, any term in the Policy that requires a legal action to be brought against Mass Bay within a certain period of time after the date on which the loss occurred), laches, or any defense based on the lapse of time, in any suit or other dispute resolution proceeding brought by Cox or such other persons or entities that may

be insureds in the Policy. The Parties understand and agree that this Agreement shall operate to toll any and all limitations periods relating in any way to the Insurance Claim only between the Effective Date through and including the date on which this Agreement is terminated pursuant to Paragraph 3 of this Agreement (the "Termination Date"). Further, the tolling of any time-related defenses shall also extend three (3) business days following the Termination Date to allow for the filing of suit if no resolution of the matter is reached during the term of this Agreement.

      2. **No Waiver.** The Parties do not waive any claims, defenses, rights, or entitlements other than those expressly set forth in this Agreement. Neither this Agreement, nor any statement contained herein, constitutes an admission of any fact or liability on the part of any Party. Neither this Agreement nor any of the statements contained herein may be offered into evidence or otherwise used by any Party in any judicial proceeding or other proceeding, other than to enforce this Agreement or to contest a motion or defense that relates to whether such proceeding was timely filed.

      3. **Termination.** This Agreement shall terminate on February 28, 2019 (the "Termination Date"). The Parties may mutually agree to terminate or extend this Agreement at any time by separate written agreement, which agreement shall specify the Termination Date for purposes of Paragraph 1 of this Agreement.

      4. **Notice.** Any notice to be provided to the Parties in connection with this Agreement shall be addressed to the Parties' representatives as follows and delivered by fax, email, and overnight mail:

To Cox:
    J. Brandon McWherter
    Gilbert McWherter Scott Bobbitt, PLC
    341 Cool Springs Boulevard, Suite 230
    Franklin, TN 37067
    Fax (731) 664-1540
    bmcwherter@gilbertfirm.com

To Mass Bay:
    Gary A. Barkman
    Executive General Adjuster
    P.O. Box 2226
    Forest, VA 24551
    Fax (508) 926-5788
    gbarkman@hanover.com

      5. **Miscellaneous.**

          a. This Agreement is binding upon and inures to the benefit of the Parties, their successors, and assigns.

b.  The undersigned agree, represent, and warrant that they have the necessary and appropriate authority and capacity to execute this Agreement and to make this Agreement fully binding and enforceable.

c.  This Agreement shall be governed and controlled by the laws of the State of Tennessee, without regard to conflicts of law principles.

d.  This Agreement contains the full and complete agreement of the Parties concerning the subject matter hereof, and it may not be altered or amended except in writing executed by or on behalf of the Parties hereto.

e.  This Agreement may be executed in any number of duplicates, originals, or counterparts, each of which shall be deemed an original and taken together shall constitute one and the same instrument. Faxed, scanned, or photocopied signatures shall be deemed to have the same effect as an original.

f.  Nothing herein shall prohibit either Party from filing a lawsuit against the other at any time.